*Decision on attorney fees at 6/2/23*

**STATE OF VERMONT**

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 516-12-19 Wrcv** |

**LYMAN HALL, INC.,**
 **Plaintiff**

v.

**BRUCE MARSHALL and**
**JEANINE WEIR,**
 **Defendants**

**DECISION**

This matter came before the undersigned for a court trial on April 12, 2023. Plaintiff's President Brion McFarlin was present and represented by Evan Chadwick, Esq. Defendants Bruce Marshall and Jeanine Weir were present for a few moments when the case was called but then filed some papers with the clerk and left the courtroom.

Based on the evidence admitted at trial, the court makes the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

Lyman Hall, Inc. is the owner of approximately 131 acres of land in Rochester, Vermont. On an 11-acre portion of the land are several surveyed and numbered sites on which privately owned homes are situated. Many of the homes have been there for decades. The homeowners do not own the underlying land. They pay fees to Lyman Hall, Inc. to support payment of property taxes and costs of shared services such as septic, road maintenance, trash removal, and maintenance of common areas. Brion McFarlin, President, is responsible for calculation and collection of monthly fees from homeowners. Lyman Hall, Inc., as owner of the land, pays the taxes on the underlying land. The owners contribute to this through their payment of site fees pursuant to Site Agreements between the owners and Lyman Hall, Inc. Each owner receives a tax bill directly from the town for their house only.

Defendants Bruce Marshall and Jeanine Weir began living in the community in 1998, although they did not then own one of the homes.

In 2003, as a result of a dispute and an agreement made in mediation, Lyman Hall, Inc. and the homeowners developed a written Site Agreement that sets forth respective responsibilities and rights as between Lyman Hall, Inc. and the owners. It includes a requirement that upon transfer of ownership of a home, the prospective purchaser must sign the Site Agreement with Lyman Hall, Inc., and takes ownership subject to the agreement.

1

In 2003 in conjunction with the development of the Site Agreement, a survey was completed that designated the locations of the numbered sites. Many sites have just one home located on them. This case involves a situation in which a duplex straddles two adjacent sites. For many years there were two different owners, one on each side of the duplex, and each paid a separate site fee for the site on which their half was located. Each site has a number. The numbers of the sites under the duplex end in 507A and 507B.[1]

In 2003, David Steinhardt purchased the portion of the duplex on 507A (its address is 216 Lower Meadow Road SW) and signed the Site Agreement on August 5, 2003. In doing so, he agreed with Lyman Hall, Inc. not to transfer his ownership interest until a proposed transferee had signed the Site Agreement with Lyman Hall, Inc. A Memorandum of the Site Agreement (short version) was recorded in the land records on October 10, 2003. Mr. Steinhardt paid the monthly fees for that site over several years. The separate property tax bill he received from the town for his ownership of his home described his property as "Dwelling – no land (1/2 of duplex)."

In 2010, Defendants Marshall and Weir purchased the other half of the duplex, which was on site 507B (its address is 216 Lower Meadow Road NE). The deed to them was recorded on February 26, 2010. They signed the Site Agreement on March 21, 2010. In doing so, they agreed with Lyman Hall, Inc. not to transfer their ownership interest until a proposed transferee had signed the Site Agreement with Lyman Hall, Inc. They paid the monthly fees for their site for several years. The separate property tax bill they received from the town for their ownership of their home described their property as "Dwelling – no land."

In 2016, David Steinhardt stopped paying monthly fees, and built up a substantial debt to Lyman Hall, Inc., which filed suit and obtained a judgment on February 4, 2019 for $21,693.09. This was recorded in the land records and constituted a lien on his interest in the duplex.

A few months later, in July of 2019, the Defendants wrote to Lyman Hall, Inc. stating that they had an agreement with Mr. Steinhardt to purchase his ownership interest and wished to pay off the lien and acquire Mr. Steinhardt's portion of the duplex. This would involve occupancy and payment of fees on two separate sites. On July 9, 2019, Mr. McFarlin wrote an email to Defendants with the question, "Can you guys handle two site fees?" They responded by email, "Yes we can and it sort of goes without saying that purchasing the house comes with its own baggage and responsibilities." Mr. McFarlin thought that this was a "win-win" for all parties and agreed to release the lien upon payment to make way for the proposed transfer. The Defendants, as owners of the portion of the duplex on site 507B, were already fully familiar with the terms of the Site Agreement including its obligations.

On July 17, 2019, Mr. Steinhardt signed a Vermont Warranty Deed transferring ownership of his portion of the duplex to Defendants. The deed stated: "This conveyance is also subject to the terms of the Site Agreement with Lyman Hall Inc. . ."

---

[1] Historical documents contain slightly different numbers but there was error involved, and these are the current and correct numbers.

Defendants paid off the Steinhardt judgment, and on August 12, 2019, Mr. McFarlin, on behalf of Lyman Hall, Inc., signed a "Release, Satisfaction and Discharge of Judgement Order." It was recorded in the land records on August 15, 2019.

The deed from Mr. Steinhardt to Defendants was recorded in the land records one week later, on August 22, 2019. Defendants had not signed a Site Agreement with Lyman Hall, Inc. for site 507A.

Five days later, on August 27, 2019, Defendants Marshall and Weir signed and recorded in the land records a document entitled "Corrective, Conveyance and Consolidation Quit Claim Deed." This represented a conveyance from themselves to themselves. The first several paragraphs relate to the two portions of the duplex. Defendants state that they "hereby quitclaim all legal standing of these two addresses AS SEPARATE PROPERTIES, as they now are legally one whole family residence." A final substantive paragraph is as follows:

> However, now that the Deeds/Titles are forthwith merged and the property is now one single family residence, all references to "A" are dropped, there is no longer a NH34507A since this property (which has had the S.W. address) is combined with and merges into NH34507B, and the listing and identification of this now single family residence will be NH34507B, (including with the tax records which will now be combined) and the N.E. and S.W. designations are now dropped, and the property from now on simply will be (and legally will be) 216 Lower Meadow Road, since it is now all one property/residence.

Plaintiff's Exhibit 15, page 2.

This paragraph purports to merge the two sites into one site by eliminating 507A as a separate site and treating it as merged into 507B. The Defendants did not have the authority to do this unilaterally, as Lyman Hall, Inc. is the owner of the land and terms related to the sites are subject to the Site Agreements with all owners. Defendants were well aware of the obligations of each of the separate site occupants to owner Lyman Hall, Inc. from: (1) their own occupancy of site 507B for nine years subject to the Site Agreement, (2) the deed to them from Mr. Steinhardt making the transfer of his interest in the duplex subject to the terms of the Site Agreement, and (3) their specific representation to Mr. McFarlin that they could handle two site fees including their understanding "that purchasing the house comes with its own baggage and responsibilities."

Defendants did not sign a Site Agreement specific to site 507A at any time. Following their acquisition of the Steinhardt half of the duplex, they continued paying site fees for 507B, but they have paid no site fees for 507A. They acknowledged in a pleading filed in this case on March 15, 2021 that at the time the deed from Mr. Steinhardt to them was prepared, they did "intend to sign a second Site Agreement and pay a second Site fee to LHI." Plaintiff's Exhibit 37, page 12. They did not do so. On the contrary, they attempted to eliminate any obligation for site fees related to the second site and very quickly executed and recorded a deed purporting to eliminate 507A as a separate site. They deny responsibility for any obligation to pay site fees on 507A. The court finds that their intent in executing the deed was to avoid the obligations of occupancy of a second site, and specifically the obligation to pay site fees for 507A.

3

Lyman Hall Inc. has sent them notices of default periodically since October 7, 2019, pursuant to the terms of the Site Agreement, specifying the amounts due on an updated basis. This lawsuit was filed in December of 2019.

In July of 2022, Lyman Hall Inc. sent notice of a site fee increase on 507A to take effect as of September 1, 2022. Defendants then not only paid no fees for 507A but stopped paying site fees on 507B as well.

As of the hearing on April 12, 2023, Defendants owe $12,933.60 in unpaid site fees on 507A and $2,985.20 in unpaid site fees on 507B for a total of $15,918.80 in unpaid site fees. The Site Agreement provides for Lyman Hall Inc. to be entitled to attorney fees incurred as a result of default by Houseowner.

## Conclusions of Law

Plaintiff asserts three claims against Defendants: Fraudulent Conveyance, Declaratory Judgment, and Breach of Contract.

### Fraudulent Conveyance

Plaintiff relies for this claim on 27 V.S.A. § 542 entitled "Fraudulent deeds" which states:

Fraudulent and deceitful deeds, conveyances, and alienations of lands, or of an estate or interest therein, and charges upon lands or upon the rents and profits thereof, procured, made or suffered with intent to avoid a right, debt, or duty of a person, shall be void as against the person, his or her heirs or assigns, whose right, debt, or duty is so intended to be avoided.

Pursuant to the facts found above, the court concludes that the "Corrective, Conveyance and Consolidation Quit Claim Deed" executed by Defendants on August 27, 2019 was prepared by them and signed and recorded with the intent to avoid the right of Lyman Hall, Inc. to collect site fees on site 507A. Therefore, as provided for in the statute, the deed is void and does not affect rights held by Lyman Hall, Inc. in 507A.

With respect to remedy on this claim, it appears that Plaintiff seeks the remedy requested in conjunction with its separately stated Count Two for Declaratory Judgment.

### Declaratory Judgment

Plaintiff is entitled to a judgment declaring that the "Corrective, Conveyance and Consolidation Quit Claim Deed" executed by Defendants on August 27, 2019 quoted above is null and void on the basis of the fraudulent deed as described above. Plaintiff's attorney shall prepare a form of declaratory judgment so stating so that once signed by the court, it can be recorded in the land records to clarify the status of sites 507A and 507B. The declaration shall also state that Defendant's occupancy of site 507A became, on August 22, 2019 (the date the Defendants' deed from Mr. Steinhardt was recorded) subject to the terms of the Site Agreement executed by Mr. Steinhardt on August 5, 2003, a memorandum of which was recorded in the land records on October 10, 2003.

4

### *Breach of Contract*

By not paying the site fees on 507B (first purchase), Defendants have clearly breached the terms of the Site Agreement they signed when they acquired their half of the duplex in 2003. Lyman Hall, Inc. is entitled to judgment for the unpaid site fees on 507B. This is a breach of the Site Agreement contract they signed.

As to the unpaid site fees on 507A, the court concludes that they also breached the terms of the Site Agreement, even though they did not sign a copy of it specific to 507A. As declared above, Defendants became subject to the Site Agreement on August 22, 2019, when they recorded the deed to them from Mr. Steinhardt that explicitly stated that the conveyance was subject to the Site Agreement that he had signed. Thus they acquired the obligation to pay site fees on 507A due beginning on September 1, 2019.

In addition, there is a second legal basis on which Plaintiff may enforce the terms of the Site Agreement against Defendants. Although Defendants did not meet the requirement of signing a new Site Agreement for 507A, they are estopped from denying that they have the obligations for owners under the Site Agreement regarding 507A by the doctrine of promissory estoppel.

"Establishment of promissory estoppel requires (1) a promise on which the promisor reasonably expects the promisee to take action or forbearance of a substantial character; (2) the promise induced a definite and substantial action or forbearance; and (3) injustice can be avoided only through the enforcement of the promise." *Green Mountain Inv. Corp. v. Flaim*, 174 Vt. 495, 497–98 (2002).

Defendants promised to take on the obligations of the Site Agreement, including specifically the payment of site fees on 507A in addition to their payment of site fees on 507B, when they responded to Mr. McFarlin's question as to whether they could handle two site fees by affirmatively answering yes and supplementing that by acknowledging that the acquisition of 507A "comes with its own baggage and responsibilities."

Defendants reasonably expected Mr. McFarlin, on behalf of Lyman Hall, Inc., to take the action he did of agreeing to release the Steinhardt lien to allow them to take title the Steinhardt half of the duplex. Based on their email representation, Mr. McFarlin reasonably expected them to sign the Site Agreement and be subject to all its terms with respect to 507A as a separate site from 507B, and to pay site fees for 507A in addition to 507B. Mr. McFarlin's release of the lien allowed them to purchase 507A on the terms they had agreed upon with Mr. Steinhardt. Defendants benefitted substantially from their promise. The facts show that Mr. McFarlin would not have agreed to the transaction unless Defendants agreed that they would owe site fees on 507A in addition to 507B. Unless Defendants are estopped from denying the obligations of the Site Agreement, the impact on Lyman Hall, Inc. and all the homeowners, loss of site fees on one of 11 sites, is substantial.

5

Injustice can only be avoided through enforcement of Defendants' promise to abide by the Site Agreement related to 507A as a separate site. Otherwise Lyman Hall, Inc. would lose the income stream from 507A for payment of common expenses, including property taxes, and lose all the benefits to which it is entitled under the Site Agreement with respect to site 507A.

Therefore, Defendants' promise to undertake the obligations of the Site Agreement with respect to site 507A is enforceable against them. Defendants are estopped from denying the obligations of the Site Agreement on 507A as a separate site.

By not paying the site fees on 507A since September 1, 2019, Defendants have clearly breached the terms of the Site Agreement. Lyman Hall, Inc. is entitled to judgment for the unpaid site fees on 507A since September 1, 2019..

Judgment will issue against Defendants, jointly and severally, for $12,933.60 in unpaid site fees on 507A and $2,985.20 in unpaid site fees on 507B for a total of $15,918.80 in unpaid site fees. Judgment will also issue for Plaintiff's reasonable attorneys' fees in this action if timely requested as set forth below.

The Site Agreement provides for payment of attorneys' fees upon default of a homeowner to fulfill obligations. Thus, Lyman Hall, Inc. is entitled to reasonable attorneys' fees for this case.

### *Summary and Order*

Plaintiff's counsel shall prepare a proposed form of Declaratory Judgment with the terms set forth above. Defendants shall have one week thereafter to file any objection as to the form.

Plaintiff's counsel shall submit an affidavit of attorneys' fees requested, supported by time and billing records, no later than May 1, 2023. Defendants shall have until May 15, 2023 to file any objection.

Defendants' counterclaims were dismissed with prejudice on April 12, 2023 at the close of the trial for failure to present evidence at the designated time for trial.

Electronically signed April 18, 2023 pursuant to V.R.E.F. 9 (d).

Mary Miles Teachout
Mary Miles Teachout
Superior Judge (Ret.), Specially Assigned

FILED

APR 1 8 2023

VERMONT SUPERIOR COURT
WINDSOR UNIT

6